UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>GUY SHEETRIT,<br><br>Defendant. | **SEALED SUPERSEDING INDICTMENT**<br><br>S2 26 Cr. 168 |

**COUNT ONE**
**(Conspiracy to Commit Wire Fraud)**

The Grand Jury charges:

**Overview**

1. From at least in or about July 2024 until at least in or about February 2026, GUY SHEETRIT, the defendant, and his co-conspirators used artificial intelligence ("AI") to impersonate the voices and/or images of corporate executives, including Chief Executive Officers (the "Impersonated CEOs"), of numerous companies (the "Victim Companies") and attorneys at major law firms (the "Impersonated Attorneys" and the "Victim Law Firms") in order to trick employees (the "Victim Employees") of those Victim Companies into sending large payments to bank accounts all over the world controlled by members of the conspiracy. After defrauding the Victim Companies, the defendant and his co-conspirators laundered the funds using fraudulent entities and cryptocurrency. In total, the defendant and his co-conspirators targeted thousands of Victim Companies and stole at least approximately $129 million.

**How the Fraud Scheme Worked**

2. GUY SHEETRIT, the defendant, and his co-conspirators typically targeted as Victim Employees individuals who worked in accounting roles at the Victim Companies, and who were in a position of sufficient authority at the Victim Company to authorize a large wire transfer.

Once the defendant and his co-conspirators identified a Victim Employee, they typically initiated the fraud by sending the Victim Employee an email through an electronic signature company such as DocuSign (the "E-Signature Emails").

3. The E-Signature Emails sent by GUY SHEETRIT, the defendant, and his co-conspirators to Victim Companies purported to be from the Impersonated CEO of the Victim Company. The E-Signature Emails claimed that the Victim Company was working on a confidential financial transaction, and required the assistance of the Victim Employee. They asked the Victim Employee to sign a nondisclosure agreement, and further directed the Victim Employee to contact a purported attorney (an Impersonated Attorney) at a Victim Law Firm. One example of an E-Signature Email sent to a major investment bank headquartered in New York, New York ("Victim Company-1") on or about October 8, 2024, stated the following:

> Hi ["Victim Employee-1"]
>
> We need to loop you into a deal we've been working on. The companies involved require you to sign an NDA - see attached.
>
> Once you've signed it, could you please call ["Impersonated Attorney-1"], our legal representative at ["Victim Law Firm-1"] on [phone number omitted]. He will assist you in scheduling a compliance call for later today, and will provide further details.
>
> Thanks,
> ["Impersonated CEO-1"]

4. GUY SHEETRIT, the defendant, and his co-conspirators generally presented the Impersonated Attorneys in the name of real individuals at real law firms, often among the 50 largest law firms in the world. SHEETRIT and his co-conspirators generally chose as Impersonated Attorneys the identities of real attorneys who worked in the European offices of the Victim Law Firms.

5. Once GUY SHEETRIT, the defendant, and his co-conspirators sent the E-Signature Emails, they would attempt to engage the Victim Employees in a phone or video call. On those calls, the defendant and his co-conspirators would use AI to mimic the voice and at times the image of the Impersonated CEO in order to convince the Victim Employee that the transaction was real. The Impersonated CEO would then direct the Victim Employee to speak with an Impersonated Attorney about the sham transaction, and to ultimately send a wire that the Impersonated Attorney would request.

6. The Impersonated Attorney would claim to the Victim Employee that the Victim Company was working on some sort of important financial transaction—often a corporate acquisition—and that it was important for various reasons that the Victim Employee keep the transaction secret from his or her fellow employees.

7. The Impersonated Attorney would ultimately direct the Victim Employee to wire a large sum of money in furtherance of that financial transaction to a particular bank account, which was in fact controlled by members of the conspiracy.

8. In sum, the purported corporate transactions were a sham, and the Victim Employees were not communicating with either the real CEO or the real attorney. Instead, GUY SHEETRIT, the defendant, and his co-conspirators pretended to be the Impersonated CEO and the Impersonated Attorney in order to trick the Victim Employee into wiring money into accounts that they controlled. In response, the Victim Employees often sent wire transfers worth millions of dollars to sham accounts controlled by the defendant and his co-conspirators.

**<u>The Fraud Scheme's Victims</u>**

9. GUY SHEETRIT, the defendant, and his co-conspirators, targeted thousands of companies all over the world as part of their fraud scheme and successfully obtained through fraud

at least approximately $129 million. Some of the victims of the fraud scheme included the following:

a. In or about October 2024, the defendant and his co-conspirators attempted to defraud a major investment bank headquartered in New York, New York (Victim Company-1) out of approximately $2,849,000 by pretending to be Impersonated Attorney-1 and Impersonated CEO-1. The defendant and his co-conspirators successfully deceived Victim Employee-1 into authorizing a wire, but the back office of Victim Company-1 prevented the wire from being sent.

b. In or about November 2024, the defendant and his co-conspirators defrauded a hospital system headquartered in Missouri ("Victim Company-2") out of approximately $4,829,580 by pretending to be the CEO of Victim Company-2 ("Impersonated CEO-2") and an attorney ("Impersonated Attorney-2") at a large international law firm ("Victim Law Firm-2").

c. In or about November 2024, the defendant and his co-conspirators defrauded a bank headquartered in Rhode Island ("Victim Company-3") out of approximately $2,684,580 by pretending to be the CEO of Victim Company-3 ("Impersonated CEO-3") and Impersonated Attorney-2 at Victim Law Firm-2.

d. In or about December 2024, the defendant and his co-conspirators defrauded a hospital system headquartered in California ("Victim Company-4") out of approximately $2,968,497 by pretending to be the CEO of Victim Company-4 and an attorney ("Impersonated Attorney-3") at a large international law firm ("Victim Law Firm-3").

e. In or about March 2025, the defendant and his co-conspirators defrauded a financial technology company ("Victim Company-5") headquartered in the United Kingdom out of approximately $11,578,474 by pretending to be the CEO of Victim Company-5 ("Impersonated

CEO-5") and an attorney ("Impersonated Attorney-4") at a large international law firm ("Victim Law Firm-4").

f. In or about April 2025, the defendant and his co-conspirators defrauded a mutual fund company ("Victim Company-6") headquartered in Massachusetts out of approximately $4,639,981 by pretending to be the CEO of Victim Company-6 ("Impersonated CEO-6") and an attorney ("Impersonated Attorney-5") at Victim Law Firm-3.

g. In or about June 2025, the defendant and his co-conspirators defrauded a pet food company ("Victim Company-7") headquartered in Florida out of approximately $5,242,747 by pretending to be the CEO of Victim Company-7 ("Impersonated CEO-7") and an attorney ("Impersonated Attorney-6") at Victim Law Firm-2.

**Laundering of the Fraud Scheme's Proceeds**

10. GUY SHEETRIT, the defendant, and his co-conspirators directed that the Victim Companies wire money to bank accounts controlled by co-conspirators all over the world, including in the United States, Spain, Portugal, Greece, the United Arab Emirates, Singapore, Austria, Slovakia, and China. Once the Victim Company's money had been wired, the defendant and his co-conspirators converted it into cryptocurrency in an attempt to conceal the source, ownership, and control of the stolen proceeds and distributed it amongst the defendant and his co-conspirators.

**Principal Role of the Defendant**

11. GUY SHEETRIT, the defendant, among other things, laundered funds from the fraud scheme.

## STATUTORY ALLEGATIONS

12. From at least in or about July 2024 through at least in or about February 2026, in the Southern District of New York, Israel, and elsewhere outside of the jurisdiction of any particular State or district of the United States, GUY SHEETRIT, the defendant, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

13. It was a part and an object of the conspiracy that GUY SHEETRIT, the defendant, and others known and unknown, knowingly having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, the defendant and his co-conspirators agreed to make and made false and misleading representations and posed as the Impersonated CEOs and the Impersonated Attorneys to trick Victim Employees and Victim Companies into wiring money to bank accounts controlled by members of the conspiracy.

(Title 18, United States Code, Sections 1349 and 3238.)

## COUNT TWO
**(Wire Fraud)**

The Grand Jury further charges:

14. The allegations contained in paragraphs 1 through 11 of this Indictment are repeated and realleged as if fully set forth herein.

15. From at least in or about July 2024 through at least in or about February 2026, in the Southern District of New York, Israel, and elsewhere outside of the jurisdiction of any particular State or district of the United States, GUY SHEETRIT, the defendant, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, the defendant and his co-conspirators made false and misleading representations and posed as the Impersonated CEOs and the Impersonated Attorneys to trick Victim Employees and Victim Companies into wiring money to bank accounts controlled by members of the conspiracy.

(Title 18, United States Code, Sections 1343, 3238, and 2.)

**COUNT THREE**
**(Aggravated Identity Theft)**

The Grand Jury further charges:

16. The allegations contained in paragraphs 1 through 11 of this Indictment are repeated and realleged as if fully set forth herein.

17. From at least in or about July 2024 through at least in or about February 2026, in the Southern District of New York, Israel, and elsewhere outside of the jurisdiction of any particular State or district of the United States, GUY SHEETRIT, the defendant, knowingly transferred, possessed, and used, without lawful authority, means of identification of another person, during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), to wit, the defendant and his co-conspirators transferred and used, and aided and abetted the use of, the identifying information of the Impersonated CEOs (including but not limited to Impersonated

CEO-1, Impersonated CEO-2, Impersonated CEO-3, Impersonated CEO-4, Impersonated CEO-5, Impersonated CEO-6, and Impersonated CEO-7) during and in relation to the wire fraud offenses charged in Counts One and Two of this Indictment.

(Title 18, United States Code, Sections 1028A(a)(1) and (b), 3238, and 2.)

## COUNT FOUR
## (Aggravated Identity Theft)

The Grand Jury further charges:

18. The allegations contained in paragraphs 1 through 11 of this Indictment are repeated and realleged as if fully set forth herein.

19. From at least in or about July 2024 through at least in or about February 2026, in the Southern District of New York, Israel, and elsewhere outside of the jurisdiction of any particular State or district of the United States, GUY SHEETRIT, the defendant, knowingly transferred, possessed, and used, without lawful authority, means of identification of another person, during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), to wit, the defendant and his co-conspirators transferred and used, and aided and abetted the use of, the identifying information of the Impersonated Attorneys (including but not limited to Impersonated Attorney-1, Impersonated Attorney-2, Impersonated Attorney-3, Impersonated Attorney-4, Impersonated Attorney-5, and Impersonated Attorney-6) during and in relation to the wire fraud offenses charged in Counts One and Two of this Indictment.

(Title 18, United States Code, Sections 1028A(a)(1) and (b), 3238, and 2.)

## COUNT FIVE
## (Money Laundering Conspiracy)

20. The allegations contained in paragraphs 1 through 11 of this Indictment are repeated and realleged as if fully set forth herein.

21. From at least in or about July 2024 through at least in or about February 2026, in the Southern District of New York, Israel, and elsewhere outside of the jurisdiction of any particular State or district of the United States, GUY SHEETRIT, the defendant, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit money laundering, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i) and 1956(a)(2)(A).

22. It was a part and an object of the conspiracy that GUY SHEETRIT, the defendant, and others known and unknown, knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, would and did conduct and attempt to conduct such a financial transaction, which transaction affected interstate and foreign commerce and involved the use of a financial institution which was engaged in, and the activities of which affected, interstate and foreign commerce, and which in fact involved the proceeds of specified unlawful activity, to wit, the wire fraud charged in Count Two of this Indictment, in violation of Title 18, United States Code, Section 1343, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i), to wit, the defendant and his co-conspirator caused the defrauded funds to be transferred to various bank and cryptocurrency accounts in an attempt to conceal the location, source, ownership, and control of those funds.

23. It was further a part and an object of the conspiracy that GUY SHEETRIT, the defendant, and others known and unknown, would and did transport, transmit, and transfer, and attempt to transport, transmit, and transfer, a monetary instrument and funds from a place in the United States to and through a place outside the United States, with the intent to promote the

carrying on of specified unlawful activity, to wit, the wire fraud charged in Count Two of this Indictment, in violation of Title 18, United States Code, Section 1343, in violation of Title 18, United States Code, Section 1956(a)(2)(A).

(Title 18, United States Code, Sections 1956(h) and 3238.)

**COUNT SIX**
**(Money Laundering)**

24. The allegations contained in paragraphs 1 through 11 of this Indictment are repeated and realleged as if fully set forth herein.

25. From at least in or about July 2024 through at least in or about February 2026, in the Southern District of New York, Israel, and elsewhere outside of the jurisdiction of any particular State or district of the United States, GUY SHEETRIT, the defendant, in an offense in and affecting interstate and foreign commerce, knowing that the property involved in a financial transaction, to wit, one or more bank or cryptocurrency transfers, represented proceeds of some form of unlawful activity, conducted and attempted to conduct such a financial transaction, which transaction affected interstate and foreign commerce and involved the use of a financial institution which was engaged in, and the activities of which affected, interstate and foreign commerce, and which in fact involved the proceeds of specified unlawful activity, to wit, the wire fraud charged in Count Two of this Indictment, in violation of Title 18, United States Code, Section 1343, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, to wit, the defendant and his co-conspirators caused the defrauded funds to be transferred to various bank and cryptocurrency accounts in an attempt to conceal the location, source, ownership, and control of those funds.

(Title 18, United States Code, Sections 1956(a)(1)(B)(i), 3238, and 2.)

## COUNT SEVEN
## (Money Laundering)

26. The allegations contained in paragraphs 1 through 11 of this Indictment are repeated and realleged as if fully set forth herein

27. From at least in or about July 2024 through at least in or about February 2026, in the Southern District of New York, Israel, and elsewhere outside of the jurisdiction of any particular State or district of the United States, GUY SHEETRIT, the defendant, transported, transmitted, and transferred, and attempted to transport, transmit, and transfer, a monetary instrument and funds from a place in the United States to and through a place outside the United States and to a place in the United States from and through a place outside the United States, with the intent to promote the carrying on of specified unlawful activity, to wit, the wire fraud charged in Count Two of this Indictment, in violation of Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1956(a)(2)(A), 3238, and 2.)

## FORFEITURE ALLEGATIONS

28. As a result of committing the wire fraud offenses alleged in Counts One and Two of this Indictment, GUY SHEETRIT, the defendant, shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses.

29. As a result of committing the money laundering offenses alleged in Counts Five, Six, and Seven of this Indictment, GUY SHEETRIT, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any and all property, real and personal, involved in said offenses, or any property traceable to such property, including but not

limited to a sum of money in United States currency representing the amount of property involved in said offenses.

**Substitute Assets Provision**

30. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third person;

(c) has been placed beyond the jurisdiction of the Court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Section 981, 982;
Title 21, United States Code, Sections 853; and
Title 28, United States Code, Section 2461.)

[redacted]
FOREPERSON

SEAN S. BUCKLEY
Attorney for the United States,
Acting under Authority Conferred
By 28 U.S.C. § 515